# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### (Central Division)

| | |
|---|---|
| KENNY AUGUSTO TETZAGUIC LUX, GERVER NOEL MARROQUIN ARGUETA, ISAIAS TEVALAN LOPEZ, CONSUELO ESPERANZA LUX TEPAZ, CECILIA ANGELICA BERNAL COBO, and JUAN CARLOS TETZAGUIC LUX,<br><br>     **Plaintiffs,**<br><br>**vs.**<br><br>**CENTRUM VALLEY FARMS, and JOSE CORNEJO,**<br><br>     **Defendants.** | Case No. \_\_\_\_\_3:25-cv-03017\_\_\_\_\_<br><br><br><br>**COMPLAINT and JURY DEMAND** |

**COME NOW** the Plaintiffs, by and through their undersigned counsel, and for their causes of action, respectfully state the following:

## INTRODUCTION

The Plaintiffs are six Guatemalan nationals who had varying immigration status in the United States, but they were all given work authorization to perform agricultural work for Defendant Centrum Valley Farms. The Plaintiffs were placed in jobs where they performed difficult, dirty, and arduous tasks cleaning and maintaining Defendants' industrial egg farm. These jobs required working in excess of 40 hours per week to complete. But Plaintiffs were not compensated with overtime pay for all of the hours of labor they performed. Like the Plaintiffs, the other low-level laborers employed by Defendant were immigrant workers, some of whom were from Mexico. On a daily basis,

Plaintiffs were harassed by their supervisor, Defendant Jose Cornejo. According to Cornejo, all Guatemalans—by virtue of being Guatemalan—are lazy and cannot perform their jobs correctly. Cornejo made comments about how he wanted to replace Plaintiffs with "better" workers from the United States or Mexico. Plaintiffs were then demoted or transferred to less desirable positions solely on the basis of their national origin and ethnicity. Once Plaintiffs complained to the appropriate HR supervisors and government agencies about this discrimination, Defendants threatened to terminate Plaintiffs' employment and have them deported if they continued to complain. Defendant Cornejo began displaying a firearm at work to intimidate the Plaintiffs and discourage future complaints. After Plaintiffs filed additional complaints about the retaliation they faced, Defendants terminated their employment. Other Plaintiffs were forced to quit out of fear and intimidation.

## PROCEDURAL REQUIREMENTS

1.      Plaintiff Kenny Augusto Tezaguic Lux filed his race, skin color, and national origin complaint with the Iowa Civil Rights Commission ("ICRC") on December 27, 2023, within the 300-day limitations period from the last discriminatory act alleged. This complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

2.      Plaintiff Kenny Augusto Tezaguic Lux filed an amended complaint with the ICRC and EEOC on July 8, 2024.

3.      On December 20, 2024, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Kenny a Right to Sue Letter.

2

4.      On January 10, 2025, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Kenny a Right to Sue Letter for his amended complaint.

5.      Plaintiff Gerver Noel Marroquin Argueta filed his race and national origin complaint with the Iowa Civil Rights Commission on December 27, 2023, within the 300-day limitations period from the last discriminatory act alleged. This complaint was cross-filed with the EEOC.

6.      Plaintiff Gerver Noel Marroquin Argueta filed an amended complaint with the ICRC and EEOC on April 15, 2024.

7.      On December 20, 2024, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Gerver a Right to Sue Letter.

8.      On January 15, 2025, less than ninety days prior the filing of this Complaint, the Iowa Civil Rights commission issued Gerver a Right to Sue Letter for his amended complaint.

9.      Plaintiff Isaias Tevalan Lopez filed his race, skin color, and national origin complaint with the Iowa Civil Rights Commission on December 27, 2023, within the 300-day limitations period from the last discriminatory act alleged. This complaint was cross-filed with the EEOC.

10.      Plaintiff Isaias Tevalan Lopez filed an amended complaint with the ICRC and the EEOC on April 25, 2024.

11.      On December 20, 2024, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Isaias a Right to Sue Letter.

12.      On January 15, 2025, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Isaias a Right to Sue Letter for his amended complaint.

3

13.     Plaintiff Consuelo Esperanza Lux Tepaz filed her race, skin color, and national origin complaint with the Iowa Civil Rights Commission on February 12, 2024, within the 300-day limitations period from the last discriminatory act alleged. This complaint was cross-filed with the EEOC.

14.     Plaintiff Consuelo Esperanza Lux Tepaz filed an amended complaint with the ICRC and the EEOC on April 25, 2024.

15.     On December 20, 2024, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Consuelo a Right to Sue Letter.

16.     On January 20, 2025, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Consuelo a Right to Sue Letter for his amended complaint.

17.     Plaintiff Cecilia Angelica Bernal Cobo filed her race, skin color, and national origin complaint with the Iowa Civil Rights Commission on July 3, 2024, within the 300-day limitations period from the last discriminatory act alleged. This complaint was cross-filed with the EEOC.

18.     Plaintiff Cecilia Angelica Bernal Cobo filed an amended complaint with the ICRC and the EEOC of July 8, 2024.

19.     On December 17, 2024, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Cecilia a Right to Sue Letter for her initial complaint.

20.     On January 15, 2025, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Cecilia a Right to Sue Letter for her amended complaint.

21.     Plaintiff Juan Carlos Tetzaguic Lux filed his race, skin color, and national origin complaint with the Iowa Civil Rights Commission on October 9, 2023, within the 300-day limitations period from the last discriminatory act alleged. This complaint was cross-filed with the EEOC.

22.     Plaintiff Juan Carlos Tezaguic Lux submitted an amendment to this complaint with the ICRC and the EEOC on July 8, 2024.

23.     On December 20, 2024, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued Juan a Right to Sue Letter.

## PARTIES

24.     Plaintiff Kenny Augusto Tetzaguic Lux is a Guatemalan citizen and was a resident of Belmond, Iowa at all times relevant to the events complained of herein.

25.     Plaintiff Gerver Noel Marroquin Argueta is a Guatemalan citizen and was a resident of Eagle Grove, Iowa at all times relevant to the events complained of herein.

26.     Plaintiff Isaias Tevalan Lopez is a Guatemalan citizen and was a resident of Belmond, Iowa at all times relevant to the events complained of herein.

27.     Plaintiff Consuelo Esperanza Lux Tepaz is a Guatemalan citizen and was a resident of Belmond, Iowa at all times relevant to the events complained of herein.

28.     Plaintiff Cecilia Angelica Bernal Cobo is a Guatemalan citizen and was a resident of Webster City, Iowa at all times relevant to the events complained of herein.

29.     Plaintiff Juan Carlos Tetzaguic Lux is a Guatemalan citizen and was a resident of Clarion, Iowa at all times relevant to the events complained of herein.

30.     Defendant Centrum Valley Farms is a limited liability partnership capable of suing and being sued under Iowa Code § 486A.307, located in Clarion, Iowa, and registered with the Iowa Secretary of State at all times relevant to the events complained of herein.

31.     Defendant Jose Cornejo is a United States citizen, and upon information and belief, was a resident of Clarion, Iowa, and an employee/manager of Centrum Valley Farms at all times relevant to the events complained of herein.

## JURISDICTION AND VENUE

32.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 18 U.S.C. § 1595. This court has supplemental jurisdiction to hear and decide the pendent state law claims under 28 U.S.C. § 1367.

33.     This court has personal jurisdiction over the Defendants under the 14th Amendment to the United States Constitution because:

      a.     Defendant Centrum Valley Farms is a limited liability partnership registered in the State of Iowa and "at home" in the State of Iowa.

      b.     Defendant Jose Cornejo is an Iowa resident.

The court also has personal jurisdiction pursuant to 18 U.S.C. § 1965(a) and (b).

34.     Venue is proper under 28 U.S.C. § 1391(b) because the events or omissions described in this complaint took place in Clarion, Wright County, Iowa. Venue is also appropriate under 18 U.S.C. § 1965.

6

## ALLEGATIONS COMMON TO ALL CLAIMS

### *Human Trafficking*

35.     Human Trafficking happens in nearly every community in Iowa, but it goes largely unnoticed and underreported.[1]

36.     The term "human trafficking" is used to describe a modern-day form of slavery.[2] Such slavery can present itself in a variety of ways, including involuntary labor.[3] A frequent form of labor trafficking involves noncitizens paying to be illegally transported to the United States, and upon their arrival, they find themselves "in the servitude of the traffickers."[4] Traffickers take advantage of the fact that these noncitizens are "surrounded by an unfamiliar culture and language" and "without identification documents, fearing for their lives and the lives of their families."[5]

37.     According to the National Human Trafficking Hotline, which "works closely with service providers, law enforcement, and other professionals in Iowa to serve victims and survivors of trafficking," there were 98 human trafficking cases reported in 2019.[6] Factories, restaurants, and housekeeping were common venues for labor trafficking.[7]

---

[1] https://who13.com/news/hiding-in-plain-sight-a-story-of-human-trafficking-in-iowa/

[2] https://www.iowaattorneygeneral.gov/for-crime-victims/fighting-human-trafficking

[3] https://www.iowaattorneygeneral.gov/for-crime-victims/fighting-human-trafficking

[4] *Id.*

[5] *Id.*

[6] https://humantraffickinghotline.org/state/iowa

[7] *Id.*

38.     The agricultural industry is one that often relies on foreign workers to meet its labor needs.[8]

39.     Some estimate that 73% of all agriculture workers in the United States were not born in the country.[9]

40.     According to the U.S. Department of Labor, agricultural workers are especially vulnerable to labor trafficking due to the temporary/seasonal nature of agricultural work, isolation from society, and the victims' reliance on their employer for basic needs including housing, transportation, and maintaining legal immigration status.[10]

41.     This leads to situations where non-citizen workers are being abused but cannot speak out due to the fear of losing both their job and their legal status in the United States.

42.     Over 70% of investigations conducted by the U.S. Department of Labor's Wage and Hour Division into farm operations found labor law violations.[11]

43.     Wage theft, retaliation, and abuse are common in the American agricultural industry. As a result of the Department of Labor's investigations in employers using non-citizen employees, more than $3.6 million in unpaid back wages have been returned to

---

[8] https://www.iowapublicradio.org/news-from-npr/news-from-npr/2022-05-27/a-human-trafficking-case-exposed-farmworker-abuses-the-government-is-promising-change
[9] https://www.ers.usda.gov/topics/farm-economy/farm-labor#:~:text=In%202014%2D16%2C%2027%20percent,percent%20held%20no%20work%20authorization.
[10] https://blog.dol.gov/2024/04/26/a-new-rule-to-improve-protections-for-farmworkers#:~:text=But%20based%20on%20the%20Department,%2C%20transportation%2C%20and%20immigration%20status
[11] https://www.epi.org/publication/federal-labor-standards-enforcement-in-agriculture-data-reveal-the-biggest-violators-and-raise-new-questions-about-how-to-improve-and-target-efforts-to-protect-farmworkers/

workers, and $6.3 million in civil penalties were assessed against businesses committing the abuse.[12]

44.     In the years following the Covid-19 pandemic, labor trafficking decreased across every U.S. labor industry except one—the agricultural industry.[13]

### *Common Allegations*

45.     Defendant Centrum Valley Farms is a commercial farm operation that produces and packages chicken eggs in central Iowa.

46.     According to Centrum Valley, it is committed to an "open and honest relationship with our customers and the public."[14]

47.     Defendant Centrum Valley Farms recruited the Plaintiffs to work at their egg production farm in Clarion, Iowa.

48.     Defendant Centrum Valley Farms assisted the Plaintiffs in getting the appropriate work authorization documents from the United States Citizenship and Immigration Services (USCIS) and/or allowed Plaintiffs to work without the proper immigration paperwork.

49.     Plaintiffs were all placed in positions working at Defendant Centrum Valley's North Production facility.

50.     At all times material to this complaint, Defendant Jose Cornejo was one of Plaintiffs' supervisors.

---

[12] https://blog.dol.gov/2024/04/26/a-new-rule-to-improve-protections-for-farmworkers
[13] https://investigatemidwest.org/2021/09/23/human-trafficking-has-long-haunted-agriculture-experts-fear-it-flourished-during-the-pandemic/
[14] https://www.linkedin.com/company/centrumvalley

9

51.     Upon information and belief, Defendant Cornejo is of Mexican origin.

52.     On a daily basis, Defendant Cornejo made repeated unwelcome comments disparaging the Plaintiffs for their Guatemalan national origin.

53.     According to Defendant Cornejo, all Guatemalans are lazy and make for poor employees.

54.     Defendant Cornejo told Plaintiffs that he wanted to replace them with Mexicans or Americans because Guatemalans were all lazy employees.

55.     Defendant Cornejo created a workplace hostile towards the Plaintiffs and encouraged other employees to harass the Plaintiffs because they are Guatemalan.

56.     When Plaintiffs complained about Defendant Cornejo to another manager, t Shannadoa Capps, the harassment did not stop. It continued and got worse.

57.     Despite Plaintiffs' complaints to Defendant Centrum Valley Farms' HR department, Defendant Cornejo was allowed to continually harass, discriminate against, and threaten the Plaintiffs.

58.     Once Defendant Cornejo learned that the Plaintiffs were filing complaints against him, he threatened to use his position as their manager to fire them and threatened to have them deported.

59.     Defendant Cornejo even brought a firearm to work, showed it to the Plaintiffs, and displayed it in his office to intimidate the Plaintiffs and silence their complaints:

10



60.     Defendant Cornejo also threatened to use his access to Plaintiffs' employee files to turn them into Immigration and Customs Enforcement (ICE).

61.     Defendant Cornejo told the Plaintiffs that if they tried to leave their positions at Centrum Valley, he would ensure that they would not be hired by anyone else in the area.

62.     All of the harassment Plaintiffs had to endure at the hands of Defendant Cornejo was in clear violation of Defendant Centrum Valley's own anti-discrimination and anti-harassment policies.

63.     Defendant Centrum Valley Farms wanted obedient workers to perform difficult and undesirable job duties that many U.S. citizens are unwilling to perform.

64.     Defendant Centrum Valley attempted to threaten the Plaintiffs to coerce their continued labor. Once Defendants realized the Plaintiffs would keep complaining and

attempting to enforce their rights, Defendants decided they no longer needed the Plaintiffs.

65.     Over time, Defendants terminated Plaintiffs' employment in retaliation for their complaints against Defendant Cornejo and the complaints Plaintiffs filed before the Iowa Civil Rights Commission.

66.     Other Plaintiffs who were not terminated were forced to quit their jobs due to the hostile work environment, threats of force, and threatened legal action made towards them.

## SPECIFIC ALLEGATIONS FOR EACH PLAINTIFF

67.     Plaintiffs replead the preceding paragraphs as if fully set forth herein.

68.     In addition to the common experiences each Plaintiff endured, the following information provides a description of the experiences of each plaintiff.

69.     The following summary of the individual allegations include specific instances of harassment and retaliation, but do not detail each and every instance in which the Plaintiffs were harassed and discriminated against by the Defendants.

### A. *Kenny Augusto Tetzaguic Lux*

70.     Kenny began working for Defendant Centrum Valley Farms in 2016 under a pseudonym.

71.     Kenny used a pseudonym at the time because he did not have legal status to be in the United States.

72.     After working at Defendant Centrum Valley Farms for over six years, the company's management said they would help him get his employment authorization documents to work in the U.S.

12

73.     After Defendant Centrum Valley Farms helped Kenny obtain his immigration documents and work authorization, they insisted that he keep working for Defendant Centrum Valley Farms.

74.     At first, Kenny wanted to seek employment at a different company.

75.     Managers told Kenny that since the company helped him get his work authorization, he needed to keep working for them.

76.     Defendant Cornejo told Kenny that if he tried to leave Centrum Valley, Defendant Cornejo would ensure that no other company in the area would hire Kenny.

77.     On December 9, 2022, Kenny was hired by Defendant Centrum Valley Farms using his real name.

78.     Kenny was employed in the barn maintenance position where he maintained the operational condition of Defendant's poultry barns, equipment, and fixed issues as needed.

79.     Maintenance employees at Defendant Centrum Valley Farms did not have pre-determined working hours.

80.     Instead, mechanics and maintenance employees were told they had to keep working until all of their work was completed every day.

81.     This policy resulted in Kenny working in excess of 40 hours every week.

82.     Even though Kenny was working over 40 hours every week, he was not compensated with overtime pay.

83.     Kenny received positive performance reviews indicating he consistently met expectations.

84. Despite Kenny's strong job performance, his supervisor, Defendant Jose Cornejo, harassed him because Kenny is Guatemalan.

85. Defendant Cornejo told Kenny multiple times that he believed Guatemalans were "lower than him."

86. Defendant Cornejo made unwelcome comments like this about Kenny's national origin on a daily basis.

87. On October 10, 2023, one of the coops on the farm flooded. Kenny was forced to stay late in order to perform maintenance.

88. Two days later, Kenny was forced to stay late again. When Kenny objected, Defendant Cornejo told him there would be consequences if he did not do as he asked. Kenny stayed late and kept working out of fear of retaliation.

89. Despite working in excess of 40 hours that week, Kenny was not compensated with any overtime pay.

90. On January 25, 2023, Defendant Cornejo brought a firearm to his office and displayed it on his desk to intimidate Kenny and the other Plaintiffs.

91. When Kenny saw the firearm, he was terrified and worried that Defendant Cornejo would physically harm him if he did not obey Defendant Cornejo's every command.

92. On May 23, 2023, Kenny was brought into an office by Defendant Cornejo and Capps.

93. Defendant Cornejo seized Kenny's cellphone from him so he could not record or report what was about to happen.

14

94.     Defendant Cornejo told Kenny he needed to "follow orders" and do whatever the managers told him to.

95.     Kenny tried to speak up for himself and explain that he did not like the way Defendant Cornejo was discriminating against him.

96.     Despite speaking Spanish, the same language as Kenny, Defendant Cornejo interrupted and taunted Kenny by saying "I cannot understand your Guatemalan accent."

97.     Defendant Cornejo did not let Kenny get a word in and then ended the meeting.

98.     Kenny grew increasingly more anxious around Defendant Cornejo.

99.     On June 3, 2023, at the end of Kenny's shift, Defendant Cornejo stopped him and said he wanted to fire all of the Guatemalan employees.

100.     Kenny later reported this incident to the Centrum Valley human resources department.

101.     Instead of taking appropriate corrective action with Defendant Cornejo, human resources gave *Kenny* a verbal warning and threatened to fire him if he kept complaining about Defendant Cornejo.

102.     On September 13, 2023, Kenny, along with the other Plaintiffs, met with Centrum Valley Farms' HR manager Kris Zahn, human resources specialist Amy Christensen, and the general manager Mark Van Oort to discuss Defendant Cornejo's unlawful behavior.

103.     On October 7, 2023, Kenny filed his first complaint with the Iowa Civil Rights Commission alleging discrimination based on his national origin.

15

104. On October 10, 2023, Defendant Cornejo made additional comments to Kenny disparaging him for being Guatemalan.

105. When Kenny complained, Defendant Cornejo made Kenny stay extra late to clean out the chicken coops.

106. On February 14, 2024, Kenny met with Capps to complain about Defendant Cornejo.

107. Kenny explained that he did not like working for Defendant Cornejo due to the racist harassment he was experiencing.

108. Capps offered Kenny a temporary transfer to a different work location, but otherwise did not do anything to stop Defendant Cornejo's continued harassment.

109. Kenny asked for a permanent solution to stop Defendant Cornejo's harassment.

110. Capps, however, did not communicate Kenny's concerns about Defendant Cornejo to HR or any other supervisor.

111. On March 29, 2024, Kenny was told he was no longer allowed to help cover shifts when other employees had a day off. Instead, he was instructed to perform solely maintenance work.

112. This was his first disciplinary incident during his employment with Centrum Valley.

113. On April 17, 2024, Defendant Cornejo told Kenny "All Guatemalans are whiners that should be replaced with hardworking Mexicans."

114. Kenny reported this comment to Senior HR employee, Amy Christensen.

16

115.   Defendant Cornejo was issued a written reprimand for this incident.

116.   Following the written reprimand, however, Defendant Cornejo continued to make disparaging comments about Kenny and the other Plaintiffs for being Guatemalan.

117.   Kenny repeatedly told Defendant Cornejo that his comments were unwelcome and that he did not want to listen to Defendant Cornejo disparage his people.

118.   On April 24, 2024, Capps issued Kenny another written discipline for "insubordination."

119.   On May 14, 2024, after Kenny filed his first complaint with the ICRC, Kenny was terminated from his employment.

120.   The reason for his termination was listed as "Violating Guiding Principles and/or Core Values" of Centrum Valley Farms.

121.   Part of the written notice stated there was a "loss of confidence in Kenny by senior management."

122.   Kenny continues to suffer mentally and emotionally as a result of the Defendants' actions.

## B. *Gerver Noel Marroquin*

123.   Gerver began working for Defendant Centrum Valley Farms on or about September 10, 2021.

124.   Gerver was hired as an agricultural systems technician.

125.   In this position, Gerver regularly worked over 40 hours a week for Defendant Centrum Valley Farms.

126.     Gerver was not compensated with overtime pay, however.

127.     Gerver was discriminated against by Defendant Jose Cornejo due to his Guatemalan origin. Defendant Cornejo repeatedly disparaged Gerver's work ethic and ability, telling Gerver that he was slower than the other workers who were not Guatemalan.

128.     Ultimately, on September 4, 2023, Defendant Cornejo demoted Gerver to the position of flock specialist. In doing so, Defendant Cornejo insulted Gerver, mocked his competency on the job, and stated that he was worthless.

129.     Gerver complained to Amy Christensen in the Human Resources department at Central Valley Farms about the demotion but was told that if he did not accept the new position then he would be fired.

130.     After being given several days to think about it, Gerver was given a document to sign accepting his demotion.

131.     Christensen told Gerver that if he did not sign the document, he would be fired. Gerver signed the document due to fear of being fired.

132.     Defendant Cornejo laughed at Gerver as he signed the document.

133.     Defendant Cornejo regularly made fun of the Guatemalan workers as they ate during their breaks.

134.     Defendant Cornejo referred to the Guatemalan workers as "dogs."

135.     On September 10, 2023, Gerver found Plaintiff Cecilia Bernal crying in the hallways near the chicken houses.

136.     Cecilia reported she was sexually harassed by a male employee and no longer felt safe working for Defendant Centrum Valley Farms.

18

137.    When Gerver brought this incident to Defendant Cornejo's attention, Defendant Cornejo told Gerver he did not have the right to complain to human resources about anything.

138.    On September 11, 2023, Gerver sent a text message to the Operations Manager, Mark Van Oort, outlining the specific instances of discrimination and abuse he had suffered.

139.    On September 13, 2023, Gerver and the other Plaintiffs made a complaint to Human Resources about the way they were being treated by Defendant Cornejo. A meeting was held with the Human Resources department, Mark Van Oort, and the Plaintiffs to discuss the situation. After the meeting, their working conditions only got worse.

140.    On September 26, 2023, after he complained about discrimination, Gerver was forced to transfer to a position that he did not want.

141.    When Gerver began his new position as a flock specialist, the chicken houses were in extremely poor condition. Gerver was blamed for their poor condition, despite only just arriving at this new position.

142.    Gerver was made to work in dangerous conditions without the proper safety equipment.

143.    On January 7, 2024, Defendant Cornejo issued Gerver a written disciplinary warning without cause to do so.

144.    Gerver refused to sign the written disciplinary warning. Defendant Cornejo and Defendant Capps told Gerver that if he did not sign the discipline, that he would be automatically terminated.

145. On January 9, 2024, Gerver was terminated from Defendant Centrum Valley Farms.

146. Gerver continues to suffer mentally and emotionally as a result of the Defendants' actions.

## C. *Isaias Tevalan Lopez*

147. Isaias began working for Defendant Centrum Valley Farms on July 28, 2022.

148. Isaias was hired as a flock specialist, which meant that he worked directly in the chicken houses.

149. In this position, Isais was required to work over 40 hours a week.

150. Isais was not compensated with overtime pay for these excess working hours.

151. While employed by Defendant Centrum Valley Farms, Isaias received positive employee reviews stating he consistently met expectations.

152. Isaias was subjected to continual racial discrimination and harassment by Defendant Jose Cornejo.

153. On one occasion, Defendant Cornejo told Isaias that he was "worthless," and "a good for nothing" only because Isaias is Guatemalan.

154. On another occasion, Defendant Cornejo referred to Isaias as "his faithful dog," "his slave," and a "Guatemalan wetback."

155. Defendant Cornejo also mocked Isaias' manner of walking. Isaias walks with a limp due to a workplace injury he suffered prior to working for Defendant Centrum Valley Farms.

156. Isaias was continually given extra work beyond his normal job responsibilities due to what Defendant Cornejo claimed were staff shortages. He was tasked with doing two or three times the amount of work that a normal employee in his position would be required to complete.

157. Isais had to perform this additional work three to four times per week, and he did not earn any overtime pay for his extra work.

158. Defendant Cornejo made Isaias apply pesticides for insects and mice in the basement of the chicken houses without the necessary protective equipment, thereby exposing him to harmful chemicals.

159. Isaias also was made to perform extra work by weighing the chickens in the chicken house.

160. When Isaias objected to this additional work, he was told that if he did not accept it, his hours would be reduced significantly.

161. Defendant Cornejo then reduced Isaias's hours from six workdays a week down to five.

162. On April 17, 2023, after complaining about Defendant Cornejo reducing his hours, Defendant Cornejo and Capps told Isaias that reducing his hours was not punishment or retaliation.

163. Defendant Cornejo subjected Isaias to extensive surveillance that he would then use to threaten Isaias.

164. Defendant Cornejo took photos of Isaias and his work area in an attempt to manufacture minor workplace violations against him.

165.    Defendant Cornejo constantly used these photos to threaten Isaias with termination and possible deportation.

166.    On or about September 13, 2023, Isaias and the other Plaintiffs complained to Human Resources about Defendant Cornejo.

167.    Defendant Centrum Valley Farms failed to take appropriate corrective action regarding Defendant Cornejo.

168.    Isaias' work permit was due to expire on April 21, 2024.

169.    Following his complaints to Human Resources, Isaias was told that Defendant Centrum Valley Farms would not help him renew his work permit.

170.    At the same time, Defendant Centrum Valley Farms worked with other employees, who were not Guatemalan and had not made complaints, to renew their work permits.

171.    Isaias' position with Centrum Valley Farms was terminated on April 21, 2024.

172.    Isais continues to suffer mentally and emotionally as a result of the Defendants' actions.

### D.  *Consuelo Esperanza Lux Tepaz*

173.    Consuelo began working for Defendant Centrum Valley Farms on or about July 10, 2019.

174.    She was hired as a "packer." Her job duties mainly consisted of packing eggs to prepare for shipment.

175. Like the other Plaintiffs, Consuelo regularly worked more than 40 hours per week for Defendant Centrum Valley Farms.

176. Defendant Centrum Valley Farms failed to pay Consuelo overtime pay.

177. On September 4, 2022, Consuelo filed a complaint with Human Resources against Defendant Jose Cornejo and Alex Calderas for racial discrimination and harassment.

178. After filing her complaint, Defendant Centrum Valley's Human Resources department did not take any action, and the discrimination and harassment against Consuelo only grew worse.

179. On September 17, 2022, Consuelo was called into a meeting with Defendant Cornejo and Alex Calderas.

180. Whenever she was called into a meeting with supervisors, the meeting always took place in a room without cameras.

181. At this meeting, Defendant Cornejo complained to Consuelo about the "damn Guatemalans" who, he stated, did not understand how to fill out their timecards correctly.

182. Consuelo never had an issue filling out her timecards.

183. At this same meeting, Defendant Cornejo and Alex Calderas complained that the Guatemalan employees spoke a different language that they could not understand.

184. Consuelo only speaks Spanish, the same language that Defendant Cornejo was using to communicate with her.

185. Consuelo was told nearly every day by Defendant Jose Cornejo and other

23

supervisors that if she had a problem with the way Defendant Cornejo managed his employees, there was nothing she could do about it because the Human Resources Department would protect him.

186. Defendant Cornejo told Consuelo nobody would believe her if she made a complaint about him.

187. Consuelo was told that she would be fired if she spoke out against the harassment Defendant Cornejo and other supervisors subjected her to.

188. On December 14, 2023, Consuelo suffered an injury while working for Defendant Centrum Valley Farms.

189. Although she did not think much of it at first, the pain was much worse on December 15, 2023, and she reported the injury to Defendant Centrum Valley.

190. On December 18, 2023, Consuelo was told that she made a grave mistake by not reporting the injury on the day that it occurred.

191. Consuelo was told that, because of her failure to report the injury on the day it occurred, she would have to wait three days for an appointment, or she could go to the hospital on her own and pay for treatment out of pocket.

192. Consuelo was told that she would still have to report for work on the following day, December 19, 2023.

193. Consuelo elected to go to the hospital on her own and pay for the appointment out of pocket.

194. On December 20, 2023, Consuelo appeared for work with a note from her doctor placing restrictions on her work due to her injury.

195.    Consuelo was told that Defendant Centrum Valley Farms would not respect these restrictions because they did not come from the company doctor.

196.    Consuelo was told that she needed to get to work packing eggs.

197.    Consuelo felt like Defendant Cornejo was discriminating against her by making her work with the injury.

198.    On January 10, 2023, Consuelo reported this incident to Human Resources.

199.    Consuelo complained that being forced to work with an injury felt like she was being retaliated against for making complaints about workplace harassment and discrimination.

200.    On February 2, 2025, Consuelo found empty beer bottles in Defendant Cornejo's office.

201.    Consuelo was forced to resign on May 15, 2024.

202.    In her resignation, Consuelo stated she was resigning because human resources never took her complaints seriously and did not do anything to address workplace harassment and retaliation.

203.    Consuelo continues to suffer mentally and emotionally as a result of the Defendants' actions.

### E. *Cecilia Bernal Cobo*

204.    Cecilia began working for Defendant Centrum Valley Farms on April 23, 2023.

205.    Cecilia was hired as a flock specialist.

206.    Defendant Jose Cornejo consistently expressed to Cecilia his preference for the employees of Mexican origin over those of Guatemalan origin.

207.    Defendant Cornejo told Cecilia that the Guatemalan employees "could not compare" to the productivity of the Mexican employees.

208.    Defendant Cornejo also told Cecilia that the Guatemalan employees were "gossips," presumably in reference to the complaints the Guatemalan employees had made about his unlawful discrimination.

209.    Cecilia was given additional responsibilities outside of the scope of her position, which resulted in her having to do double the amount of work that should have been required of her.

210.    She was forced to spray pesticides even though there was a group of employees specifically designated to perform this task. She was not given the necessary protective equipment and was exposed to harsh chemicals.

211.    As part of saddling her with additional responsibilities, Cecilia was not able to take adequate breaks during the course of a workday.

212.    Cecilia completed these extra tasks and regularly worked in excess of 40 hours per week at Defendant Cornejo's command.

213.    Cecilia was not compensated with overtime pay for these extra hours of work.

214.    On September 10, 2023, Cecilia was the victim of a sexual harassed by one of her co-workers.

215.    When Cecilia and the other Plaintiffs brought this incident to Defendant

26

Cornejo's attention, he told Cecilia not to complain or get HR involved.

216.    Following this incident, and in spite of Defendant Cornejo's request, Cecilia contacted Defendant Centrum Valley Farms' Human Resources department.

217.    Cecilia explained that she was struggling mentally and emotionally with the trauma of being sexually harassed.

218.    Defendant Centrum Valley Farms failed to take appropriate corrective action and failed to provide Cecilia with any support.

219.    On September 13, 2024, Cecilia and the other Plaintiffs went as a group to complain about their working conditions and the discrimination they were subjected to by Defendant Cornejo.

220.    Defendant Centrum Valley Farms failed to take any corrective action against Defendant Cornejo and failed to adequately address the Plaintiffs' complaint.

221.    On September 18, 2024, Cecilia again had a meeting with the Human Resources department regarding her complaints of labor abuse.

222.    However, following this meeting, Cecilia was only subjected to additional pressure, harassment, and abuse of authority by Defendant Cornejo and others.

223.    Defendant Cornejo singled out Cecilia's work, reprimanding her for incidences of mortality in the chicken house she oversaw.

224.    Even though the other chicken houses experienced comparable rates of mortality, Cecilia was the only employee who was reprimanded or faced negative consequences.

225.    The other employees who oversaw chicken houses were not of Guatemalan

origin.

226. Eventually, Cecilia was unable to put up with the continued abuse any longer.

227. On or about May 24, 2024, she announced her intent to resign.

228. Initially, Defendant Cornejo told her that she did not have the right to resign.

229. Defendant Cornejo wanted Cecilia to keep working and performing labor for the benefit of Defendant Centrum Valley Farms.

230. After Cecilia protested that she did have the right to resign under the laws of the State of Iowa, Defendant Cornejo told her that he would make sure that no other company in the area would hire her.

231. Defendant Cornejo knew that Cecilia's legal status in the U.S. was tied to her job and ability to maintain continued employment.

232. On or about May 24, 2024, Cecilia submitted her formal resignation.

233. In the form, Cecilia stated that the reason she was resigning was for "various retaliations against me for telling the truth and speaking about my rights."

234. Cecilia continues to suffer mentally and emotionally as a result of the Defendants' actions.

### F. *Juan Carlos Tetzaguic Lux*

235. Plaintiff Juan Carlos was hired by Defendant Centrum Valley farms on April 19, 2022 as a mechanic. Juan's job duties included performing maintenance on equipment in the Defendant's barns.

236. Juan's country of origin is Guatemala.

237. Juan was a hard-working employee and received positive performance reviews indicating he was consistently meeting expectations or consistently exceeding expectations while employed at Defendant Centrum Valley Farms.

238. Despite his satisfactory job performance, Juan's supervisors and co-workers harassed him on the basis of his national origin on a daily basis.

239. Starting as early as September 14, 2022, Defendant Cornejo began harassing Juan just because he was Guatemalan.

240. Defendant Cornejo routinely disparaged Juan by calling him a "lazy Guatemalan," stating that he could call immigration on Juan to have him deported whenever he wanted, that Juan and the other Guatemalan employees were hired to perform labor, not to "complain or think," and that Defendant Cornejo simply hated all Guatemalans.

241. The most common racist epithet Defendant Cornejo used was "Pinches Guatemaltecos." In English, this translates to: "Fucking Guatemalans."

242. On a daily basis, Defendant Cornejo would begin his conversations with Juan and others by saying "Pinches Guatemaltecos…" and complain about the Plaintiffs.

243. On September 14, 2022, Defendant Cornejo accused Juan of "stealing" hours from the company by clocking in and not working.

244. Juan asked Defendant Cornejo to show him proof that Juan was not working. Defendant Cornejo refused.

245.    Concerned about Defendant Cornejo's behavior, Juan reported Defendant Cornejo to Capps and Amy Christensen in the HR department.

246.    Juan complained that Defendant Cornejo was disrespectful towards employees based on their national origin and gender. Defendant Cornejo was discriminating against any employee who was not Mexican or American and also discriminated against female employees.

247.    Juan also stated that Defendant Cornejo would pit employees of different national origins against each other and create a hostile work environment.

248.    Amy and Capps did not take Juan's complaint seriously and stated they trusted Defendant Cornejo.

249.    Capps told Juan that his responsibilities included making sure employees were compensated and not to babysit the employees.

250.    After Juan started complaining about Defendant Cornejo, he faced retaliation.

251.    Defendant Cornejo placed surveillance cameras in Juan's work areas to surveil him and intimidate him.

252.    Defendant Cornejo told Juan and the other Guatemalan employees that since he had access to their personal information in their personnel files, that he could send that information to immigration enforcement to have them deported.

253.    Defendant Cornejo also started carrying a firearm at work. Defendant Cornejo made sure that Juan and others could see the firearm.

30

254. This threat made Juan scared to speak out about the harassment he was experiencing.

255. On June 3, 2023, Juan complained to HR again. Juan explained that the verbal reprimands from Defendant Cornejo were improper and that employees were suffering because of them.

256. Nothing was done about Defendant Cornejo following this complaint.

257. On or about September 10, 2023, Juan complained to HR again about Defendant Cornejo. He explained that Defendant Cornejo was racist towards the Guatemalan employees.

258. Juan also expressed concerns that his complaints were not being taken seriously.

259. Nothing was done following this complaint.

260. On or about April 12, 2023, Juan complained again that Defendant Cornejo was harassing him with racist remarks, and that the harassment became more frequent after his prior complaints.

261. Juan also complained that it felt like he was being assigned more difficult and less desirable job duties—such as cleaning excrement from chicken coops—because he was complaining about workplace harassment.

262. On November 26, 2023, Defendant Cornejo made Juan perform job duties that were outside the scope of his position as a mechanic.

263. Defendant Cornejo demanded that Juan perform maintenance on and clean 14 different chicken coops.

264.    When Juan asked to have the help of an employee experienced with these job duties, Defendant Cornejo said he would have Juan fired for insubordination.

265.    Following this incident, on October 9, 2023, Juan filed a complaint in the Iowa Civil Rights Commission alleging harassment and retaliation.

266.    Defendants continued to harass and retaliate against Juan after he submitted this complaint.

267.    On December 4, 2023, Juan sent a text message to Defendant's Human Resources department.

268.    In this text message, Juan explained that Defendant Cornejo was constantly harassing him and disregarding his complaints about both harassment and workplace safety issues.

269.    Once again, the HR department explained that Defendant Cornejo had the company's full support.

270.    Juan did not understand why the company was not taking any action regarding Defendant Cornejo following his complaints.

271.    On December 11, 2023, Juan met with Defendant's senior human resources manager Kris Zahn.

272.    In this meeting, Juan discussed all the problems he had been experiencing with Defendant Cornejo, including the racist harassment and how Defendant Cornejo retaliated against Juan by making him perform dangerous and undesirable job duties.

273. Zahn told Juan that Defendant Cornejo was making sure all of the job duties were being completed. Zahn did not address Juan's concerns about harassment or retaliation.

274. On April 4, 2024, Defendant Cornejo accused Juan of leaving a heat lamp on in one of the barns and almost starting a fire.

275. Juan tried to explain that he did not do this, but Defendant Cornejo reported Juan for this anyway.

276. Later, Juan tried to explain that he did not leave the equipment on, and that Defendant Cornejo was retaliating against him.

277. All Juan was told is that HR would "look into that."

278. On April 25, 2024, Defendant Cornejo harassed Juan by telling him that he could have Juan deported whenever he wanted.

279. The work environment was so hostile and allowed blatant racism that an additional Centrum Valley employee, Erick Villagran, joined Defendant Cornejo saying he wanted to get Juan deported.

280. On May 4, 2024, Juan reported an incident to Amy in HR where one of the barns, Barn #9, caught fire.

281. Juan caught the fire while it was small and caused significant damage.

282. Jaun was able to use a fire extinguisher to prevent further property damage and any harm to the employees at Centrum Valley Farms.

283. Amy thanked Juan for preventing fire damage and asked him to contact HR since this was a safety issue.

284.    Later, Defendant Cornejo accused Juan of trying to start this fire.

285.    On May 14, 2024, Juan was forced to quit his employment due to the hostile work environment at Centrum Valley Farms.

286.    In his resignation, Juan specifically stated he was resigning because Defendant Cornejo harassed him and made false accusations about him. Juan also stated he was afraid of further retaliation for bringing truthful complaints to the company.

287.    Juan continues to suffer mentally and emotionally as a result of the Defendants' actions.

## CAUSES OF ACTION

### COUNT 1
### Trafficking with Respect to Peonage and Forced Labor
### TVPRA, 18 U.S.C. § 1590, § 1595
### (all Plaintiffs against Defendant Centrum Valley Farms)

288.    Plaintiffs replead the preceding paragraphs as if fully set forth herein.

289.    All Plaintiffs plead this Count against Defendant Centrum Valley Farms.

290.    Defendants knowingly recruited, harbored, transported, provided, and obtained Plaintiffs for labor in violation of the TVPRA, by one or by any combination, of the following means:

   a. Defendant Centrum Valley Farms recruited the Plaintiffs to perform labor on their egg farms and completed the Plaintiffs' immigration paperwork for them.

   b. Defendant Centrum Valley Farms obtained Plaintiffs labor by making unlawful threats of force and legal action if Plaintiffs expressed a desire to stop working for the Defendants.

34

c. Defendant Centrum Valley Farms harbored Plaintiffs knowing some of the Plaintiffs were not U.S. citizens but forced them to keep working anyway.

291. The purpose of these actions was to obtain Plaintiffs' labor by force and by peonage.

292. The defendants actually did obtain Plaintiffs' labor by these means.

293. Defendants knew or were in reckless disregard of the fact that their venture involved human trafficking.

294. Plaintiffs were harmed as a result of these actions.

**WHEREFORE** Plaintiffs request Judgment against the Defendants as follows:

a. Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b. Plaintiffs' costs in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

c. Punitive damages; and

d. Other relief the Court deems just and equitable.

**COUNT 2**
**TVPRA, 18 U.S.C. § 1589, § 1595**
**(all Plaintiffs against Defendant Centrum Valley Farms)**

295. Plaintiffs replead the preceding paragraphs as if fully set forth herein.

296. Defendants obtained the labor and/or services of the Plaintiffs by one or by any combination, of the following means:

a. By means of serious harm or threats of serious harm to that person or another person, including displaying a firearm to coerce labor, threatening to

35

terminate Plaintiffs' employment so Plaintiffs could not afford food or housing, and

b. By means of the abuse or threatened abuse of the legal process; including threatening to have Plaintiffs deported and threatening to terminate Plaintiffs' employment without cause so they would not be compliant with their visa requirements.

297. Defendants knowingly benefited, either financially or by receiving anything of value, specifically:

a. Defendants were compensated with guaranteed workers to perform difficult and undesirable jobs, who could not quit or leave their jobs without fear of harm, employment retaliation, and legal retaliation (e.g., deportation).

298. Defendants knew or acted with reckless disregard to the fact that the venture involved forced labor.

299. Defendants actually obtained forced labor as a result of these actions.

300. Plaintiffs were harmed as a result of these actions.

**WHEREFORE** Plaintiffs request Judgment against the Defendants as follows:

a. Actual, compensatory, consequential, an all other allowable damages against Defendants in an amount yet to be determined;

b. Plaintiffs' costs in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

c. Punitive damages; and

d. Other relief the Court deems just and equitable.

## COUNT 3
## UNPAID OVERTIME WAGES
## FAIR LABOR STANDARDS ACT 29 U.S.C. § 207
**(all Plaintiffs against Defendant Centrum Valley Farms)**

301.  Plaintiffs replead the preceding paragraphs as if fully set forth herein.

302.  At all times relevant to this Complaint, Defendant Centrum Valley Farms was Plaintiffs' employer within the meaning of 29 U.S.C. § 201.

303.  Defendant Centrum Valley Farms had the right to control the nature and quality of the work Plaintiffs performed.

304.  Defendant Centrum Valley Farms and its representatives, including Defendant Cornejo, were Plaintiffs' direct, on-site supervisors.

305.  Defendants had the right to hire, fire, discipline, demote, or promote the Plaintiffs.

306.  Defendant issued paychecks to the Plaintiffs.

307.  At all times material hereto, Defendant Centrum Valley was subject to the requirements of the Fair Labor Standards Act.

308.  Defendants failed to pay Plaintiffs all wages due to them and failed to pay Plaintiffs time and a half for all hours of labor preformed in excess of 40 hours per week.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows: unpaid overtime wages, liquidated damages, prejudgment and post judgment interest, court costs, attorney fees, and such other relief as the Court deems just and equitable.

## COUNT 4

37

## HARASSMENT AND DISCRIMINATION ON THE BASIS OF RACE, SKIN COLOR, AND NATIONAL ORIGIN IN VIOLATION OF IOWA CODE CHAPTER 216.6
### (all Plaintiffs against all Defendants)

309.    Plaintiffs are Guatemalan and their skin color is brown. They are part of a protected class on the basis of their national origin, race, and skin color under the Iowa Civil Rights Act, Iowa Code Chapter 216.

310.    Defendants discriminated against and harassed Plaintiffs with respect to the terms and conditions of their employment and permitted harassment and discrimination based on national origin, race, and skin color against Plaintiffs in violation of Iowa Code Chapter 216, as set forth above.

311.    The conduct was sufficiently severe that a reasonable person in Plaintiffs' position would find the work environment to be hostile or abusive.

312.    Defendants' conduct towards Plaintiffs was unwelcome.

313.    Defendant Centrum Valley Farms knew, or should have known, of the national origin, race, and skin color discrimination undertaken by its employees, including Defendants Cornejo and Capps.

314.    Defendants' violation of Iowa Code Chapter 216 was a cause of injuries and damages suffered by Plaintiffs.

315.    As a result of Defendants' actions, Plaintiffs have in the past and will in the future incur lost past income, lost future income, lost past benefits, past and future medical expenses, and other damages which may become apparent during the course of discovery.

**WHEREFORE** Plaintiffs pray for the following relief:

38

a. Defendants' conduct be declared to be in violation of Plaintiffs' rights under and pursuant to Iowa Code Chapter 216;

b. The Defendants and their officers, employees, agents, attorneys, successors and assigns, and those acting in concert therewith, be permanently enjoined from any conduct violating Plaintiffs' rights, or the rights of others similarly stated, as secured by Chapter 216 of the Iowa Code, and that the Court order such other injunctive relief as necessary to prevent the Defendants from continuing their discriminatory practices and to protect others similarly situated;

c. That Plaintiffs be awarded compensatory damages;

d. That Plaintiffs be made whole by providing them with appropriate lost earnings and benefits with pre-judgment interest;

e. That Plaintiffs be awarded reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Iowa Code § 216.15; and

f. That Plaintiffs be awarded such additional and further relief as is just and proper.

### COUNT 5
### RETALIATION IN VIOLATION OF IOWA CODE SECTION 216.11
**(all Plaintiffs against all Defendants)**

316.    Plaintiffs replead the preceding paragraphs as if fully set forth herein.

317.    Plaintiffs complained multiple times about the discrimination and harassment they experienced, as discussed *supra*.

39

318.    Following Plaintiffs' complaints about Defendant Cornejo to HR, Defendant Cornejo began harassing the Plaintiffs more, threatened to have Plaintiffs deported, made Plaintiffs conduct undesirable job duties that were not included in their normal job duties, and terminated Plaintiffs Kenny, Gerver, and Isaias.

319.    Plaintiffs Consuelo, Cecilia, and Juan were forced to quit due to the harassment, retaliation, and threats made by Defendants.

320.    Iowa Code § 216.11 forbids harassment and retaliation against a person for filing a complaint alleging illegal discrimination.

321.    Defendants' violations of Iowa Code Chapter 216 is a cause of injuries suffered by Plaintiffs.

322.    As a result of Defendants' actions, Plaintiffs have in the past and will in the future incur lost past income, lost future income, lost past benefits, past and future medical expenses, and other damages which may become apparent during the course of discovery.

**WHEREFORE** Plaintiffs pray for the following relief:

a.   Defendants' conduct be declared to be in violation of Plaintiffs' rights under and pursuant to Iowa Code Chapter 216;

b.   The Defendants and their officers, employees, agents, attorneys, successors and assigns, and those acting in concert therewith, be permanently enjoined from any conduct violating Plaintiffs' rights, or the rights of others similarly stated, as secured by Chapter 216 of the Iowa Code, and that the Court order such other injunctive relief as necessary to prevent the Defendants from

continuing their discriminatory practices and to protect others similarly situated;

c. That Plaintiffs be awarded compensatory damages;

d. That Plaintiffs be made whole by providing them with appropriate lost earnings and benefits with pre-judgment interest;

e. That Plaintiffs be awarded reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Iowa Code § 216.15; and

f. That Plaintiffs be awarded such additional and further relief as is just and proper.

**COUNT 6**
**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**
**(All Plaintiffs against Defendant Centrum Valley Farms)**

323. Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph was set forth here.

324. Iowa Code Chapter 91A, the Iowa Wage Payment Collection Act, constitutes a clearly defined public policy that protects employment activities, including asking for full compensation of wages, expenses, and/or deductions, and engaging in wage disputes. *Tullis v. Merrill*, 584 N.W.2d 236, 239 (Iowa 1998); *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109-10 (Iowa 2011); *Carver-Kimm v. Reynolds*, 922 N.W.2d 591, 598 (Iowa 2023).

325. Allowing employers to terminate employees who ask to be compensated for their labor jeopardizes the recognized public policy contained in Iowa Code Chapter 91A.

326.	Iowa Code Chapter 216, the Iowa Civil Rights Act, constitutes a clearly defined public policy that protects employment activities, including making complaints about workplace harassment, discrimination, and other unlawful employment practices.

327.	Allowing employers to terminate employees who complain about violations of the Iowa Civil Rights Act jeopardizes the recognized public policy contained in Iowa Code Chapter 216.

328.	Plaintiffs made multiple demands to be compensated for the work they performed. Plaintiffs also lodged multiple complaints about unlawful discrimination.

329.	Defendants terminated Plaintiffs' or forced Plaintiffs to quit their employment due to their demands to receive their wages and because of the hostile work environment.

330.	Defendants had no overriding business justification for withholding Plaintiffs' wages, terminating their employment, or allowing discrimination to occur.

331.	Defendants acted with willful and wanton disregard for Plaintiffs' rights and with reckless and/or willful disregard for the consequences of their conduct.

332.	As an actual and proximate result of Defendant's illegal actions, Plaintiffs have in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; loss of enjoyment of life; lost wages and benefits; and loss of future earnings.

333.	As a result of Defendants' acts and omissions, Plaintiffs are entitled to the following damages under Iowa law:

a.	Past and future lost wages and benefits;

b. Past and future loss of enjoyment of life;

c. Past and future mental and emotional distress;

d. Punitive damages;

e. Attorney's fees and costs incurred in prosecuting this action; and

f. Additional and further relief as this Court deems necessary and proper.

**WHEREFORE**, the Plaintiffs pray for judgment against Defendants as follows: past and future lost wages and benefits, past and future loss of enjoyment of life, past and future mental and emotional distress, punitive damages, court costs, attorney fees, and such other relief as the Court deems just and equitable.

## COUNT 7
## Respondeat Superior

334. Plaintiffs replead the preceding paragraphs as if fully set forth herein.

335. Defendant Centrum Valley Farms employed Defendant Cornejo.

336. Under the doctrine of respondeat superior, an employer is liable for the negligent and/or tortious actions committed by its employees while the employee is acting within the scope of their employment.

337. Defendant Cornejo were acting within the scope of their employment with Centrum Valley Farms with respect to each of their actions described herein.

338. Defendant Cornejo were advancing the interests of Defendant Centrum Valley Farms with respect to each of the actions described herein.

339. Defendant Centrum Valley Farms is vicariously liable for the actions of its employees, including the individually named Defendant and other employees.

43

## COUNT 8
## NEGLIGENT HIRING, TRAINING, AND SUPERVISION
### (All Plaintiffs against Defendant Centrum Valley Farms)

340.    Plaintiffs replead the preceding paragraphs as if fully set forth herein.

341.    Defendant Cornejo were employees, agents, managers, or otherwise acting on behalf of Defendant Centrum Valley Farms.

342.    Defendant Centrum Valley Farms negligently failed to train Defendant Cornejo in fundamental workplace management, supervision, employee relations, safety, anti-discrimination, anti-harassment, and other Centrum Valley Farms procedures and policies.

343.    The failure to train and supervise its managers on how to properly manage its workforce and follow the company's written policies was negligent.

344.    As a result of Defendants' negligent acts and omissions, Plaintiffs suffered harm, including but not limited to:

   a.  Past, present, and future mental pain and suffering;

   b.  Past and future lost income;

   c.  Past and future lost benefits;

   d.  Actual compensatory damages;

   e.  punitive damages; and

   f.  any other damages allowed under law which may be discovered through the course of discovery.

**WHEREFORE**, Plaintiffs pray for Judgment against the aforementioned Defendants as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendant in an amount yet to be determined;
b. Compensation for violation of their mental pain and suffering;
c. Punitive damages; and
d. Any other relief the Court deems just and equitable.

<u>**JURY DEMAND**</u>

**COME NOW** the Plaintiffs, and demand a trial by jury for all counts pled herein.

*Respectfully submitted,*

**PARRISH KRUIDENIER, L.L.P.**

By:   /s/ *Benjamin D. Bergmann*
       Benjamin Bergmann      AT0009469
       Nathan Sandbothe      AT0015317
       2910 Grand Avenue
       Des Moines, Iowa 50312
       Telephone: (515) 284-5737
       Facsimile: (515) 284-1704
       E-Mail:  bbergmann@parrishlaw.com
                   nsandbothe@parrishlaw.com
       **ATTORNEYS FOR PLAINTIFFS**

45